| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: February 13, 2018 1:29 PM<br>FILING ID: 107C17DDD5499<br>CASE NUMBER: 2018CV30537 |
|---|---|
| **Plaintiff:** WILLIAM D. DIONES<br><br>v.<br><br>**Defendant:**   AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., a Wisconsin stock insurance company | COURT USE ONLY |
| *Attorneys for Plaintiff*<br>Thomas G. Tasker, Of Counsel, Reg. No. 11556<br>Henry Miniter, Reg. No. 37412<br>WAHLBERG, WOODRUFF, NIMMO & SLOANE, LLP<br>4601 DTC Boulevard, Suite 950<br>Denver, CO 80237<br>Telephone: 303/ 571-5302<br>Fax: 303/ 571-1806<br>tom@denvertriallawyers.com<br>henry@denvertriallawyers.com | Case Number:<br><br>Courtroom: |

## COMPLAINT AND JURY DEMAND

Plaintiff William D. Diones, through counsel, submits the following Complaint against the Defendant, American Family Mutual Insurance Company ("American Family"):

### GENERAL ALLEGATIONS

1. Plaintiff is an individual who presently resides in Arapahoe County, Colorado.

2. American Family is a Wisconsin stock insurance company authorized to conduct insurance business in Colorado.

3. Venue is proper in the City and County of Denver under C.R.C.P. 98(c)(1), because this is an action in tort and contract, American Family is a non-resident of this state, and Plaintiff has designated the City and County of Denver as the county of venue in this action.

4. On or about October 30, 2014, at about 3:00 p.m., at the intersection of Parker Road and Pine Lane in Parker, Colorado, a vehicle driven by Charles Caldwell ("Caldwell")

Exhibit B

collided with the rear of a vehicle driven by Susan Bjorkland ("Bjorkland"), causing what the investigating police officer described as severe damage to the rear of the Bjorkland vehicle.

5.  When the Caldwell vehicle collided with the rear end of the Bjorkland vehicle, which was at a complete stop, the Bjorkland vehicle was pushed forward into a third vehicle, causing additional damage to the Bjorkland vehicle.

6.  At the time of the collision, Plaintiff was a restrained rear-seat passenger in the Bjorkland vehicle.

7.  The sole cause of the collision was Caldwell's negligent operation of his vehicle.

8.  As a direct result of the collision, Plaintiff suffered bodily injuries and is legally entitled to recover the following past and future compensatory damages against Caldwell: (a) physical impairment; (b) physical and mental pain and suffering; (c) emotional stress; (d) impairment to the quality of life; (e) inconvenience; (f) medical expenses; (g) lost income; and (h) impairment of his ability to earn money in the future.

9.  At the time of the collision, Plaintiff was insured under American Family auto policies that provided a total of $400,000 in first-party underinsured motorist ("UIM") coverage to Plaintiff ("the Policies").

10. Caldwell was insured by USAA at the time of the collision, and USAA paid Caldwell's $100,000 liability-insurance limits to Plaintiff, with American Family's consent, on or about November 29, 2016.

11. Under the Policies, American Family is required to pay UIM benefits to Plaintiff in a sum equal to the amount of compensatory damages Plaintiff is legally entitled to recover from Caldwell for bodily injury, less Caldwell's $100,000 liability limit.

12. American Family was timely notified of Plaintiff's UIM claim.

13. By letter dated December 9, 2014, Plaintiff's counsel sent a letter of representation to American Family.

14. By letter dated April 19, 2015, American Family notified Plaintiff's counsel that Plaintiff had four American Family automobile policies in force on the date of the collision, and that each policy carried per-person UIM coverage of $100,000, for a stackable total of $400,000 in UIM coverage.

15. By letter dated July 27, 2016, American Family notified Plaintiff's counsel that it was waiving its subrogation rights for Plaintiff's UIM claim and giving Plaintiff permission for to settle his bodily-injury claim against Caldwell for Caldwell's $100,000 liability limits with USAA.

16. By letter dated May 8, 2017, Plaintiff's counsel requested payment of Plaintiff's UIM limits from American Family.

17. With the May 8, 2017 letter, Plaintiff's counsel provided American Family with medical records supporting Plaintiff's UIM claim.

18. In the May 8, 2017 letter, Plaintiff's counsel informed American Family that Plaintiff was claiming $247,698.90 in past lost earnings.

19. By letter dated May 15, 2017, American Family notified Plaintiff's counsel that it was in the process of evaluating Plaintiff's UIM demand, and requested Plaintiff to provide documentation relating to his lost income claim, including his W-2s and/or pay stubs; verification that he missed time from work due to the collision; and "appropriate documentation" that the time he missed from work was medically necessary.

20. By letter dated May 19, 2017, Plaintiff's counsel provided American Family with Plaintiff's tax returns, and informed American Family that Plaintiff was self-employed, and thus, that Plaintiff's W-2s, paystubs, and missed time from work were not applicable to his claim.

21. By letter dated June 14, 2017, American Family informed Plaintiff's counsel that: (a) American Family had completed its review of Plaintiff's UIM claim; and (b) that American Family was denying Plaintiff's UIM claim on the basis that American Family had determined that the compensatory damages he was legally entitled to collect from Caldwell did not exceed the $100,000 settlement he received from Caldwell.

22. Before American Family denied Plaintiff's UIM claim on June 14, 2017, it had unreasonably failed to request Plaintiff to (a) give a recorded statement about his damages or (b) submit to a medical exam by a doctor of its choosing.

23. By letter dated August 28, 2017, Plaintiff's counsel (a) provided American Family with an economic analysis report from Jeffrey Nehls at Pacey Economics which concluded that Plaintiff's economic damages from the collision totaled $1,217,400; and (b) requested American Family to make a good faith offer to Plaintiff.

24. In the August 28, 2017 letter, Plaintiff's counsel invited American Family to take Plaintiff's in-person, recorded statement at its earliest convenience.

25. After receiving the August 28, 2017 letter, American Family still did not request a recorded statement from Plaintiff, and thus unreasonably chose not to seek any information directly from Plaintiff about his economic or non-economic damages.

26. Upon information and belief, prior to August 28, 2017, American Family had conducted no analysis of Plaintiff's lost-income claim.

27. By letter dated September 11, 2017, American Family informed Plaintiff's counsel that a new adjuster had been assigned to handle Plaintiff's UIM claim.

3

28. By letter dated September 13, 2017, American Family informed Plaintiff's counsel that it was requesting an independent medical examination of Plaintiff, based on American Family's conclusion that due to the "nature of the impact and the injuries being claimed" American Family needed to determine whether the treatment Plaintiff had received since the collision would be considered reasonable, necessary, and accident-related.

29. By letter dated October 4, 2017, American Family (a) informed Plaintiff's counsel that it had been advised by its forensic accountants that the financial information Plaintiff had provided was insufficient to come to any conclusion regarding Plaintiff's past or future wage losses; and (b) requested additional financial documentation from Plaintiff.

30. Upon information and belief, American Family had no reasonable basis for requesting this additional financial documentation from Plaintiff.

31. On or about November 22, 2017, American Family received a report from John J. Aschberger, M.D., the doctor American Family hired to render medical opinions on its behalf in connection with Plaintiff's UIM claim.

32. In his report, Dr. Aschberger informed American Family that, in the subject collision, Plaintiff sustained a concussion with mild residual symptoms, including cognitive issues and post-concussive headache; a lumbosacral strain with mild residual symptoms and SI irritation; and cervical strain with good improvement.

33. In his report, Dr. Aschberger also informed American Family that he did not believe that there were any pertinent pre-existing conditions, and that the treatment referenced in his report appeared to be specifically and appropriately related to the collision.

34. In his report, Dr. Aschberger also informed American Family that further treatment may be considered with corticosteroid injections to the SI joints as outlined by Dr. Reinhard.

35. In his report, Dr. Aschberger also informed American Family that the symptoms Plaintiff described to him relating to memory, recalling conversations, and concentration would be typical for post-concussive symptomology.

36. In his report, Dr. Aschberger also informed American Family that Plaintiff's work productivity may have reasonably been affected by attending medical appointments and issues of concentration, among other things; and that given Plaintiff's line of work, long term memory issues and concentration issues may result in some loss of productivity.

37. Upon information and belief, American Family unreasonably failed to conduct a thorough analysis of Dr. Aschberger's report and unreasonably failed to adequately take Dr. Achsberger's conclusions into account in evaluating Plaintiff's claim.

38. Upon information and and belief, American Family unreasonably made no effort to contact any of Plaintiff's treating healthcare providers in connection with its investigation and evaluation of Plaintiff's claim.

39. On or about January 12, 2018, Plaintiff received a report from Cathy M. Denson, CPA, the accountant American Family hired to challenge Plaintiff's claim for lost-income damages.

40. Ms. Denson found, without any stated basis, that Plaintiff had returned to his pre-loss level of work by December 12, 2014, and therefore concluded that Plaintiff did not sustain any lost income after December 12, 2014.

41. There is no indication in Ms. Denson's report that American Family had ever given her Mr. Nehls' economic analysis report or Dr. Aschberger's report to review.

42. By letter dated January 19, 2018, American Family informed Plaintiff, through his counsel, that they had evaluated his crash-related damages at $122,659.25, including only $5,303 for lost income and only $10,000 for "permanency and impairment."

43. Enclosed with the January 19, 2018 letter was a check in the amount of $22,659.25, which represented the undisputed amount of UIM benefits American Family determined were owed to Plaintiff after subtracting the $100,000 payment Plaintiff received from Caldwell's liability insurer.

44. On January 26, 2018, American Family confirmed that it was tendering the $22,659.25 to Plaintiff without conditions and with the understanding that his acceptance of those funds would not operate as a waiver of any other claims he may have against American Family.

45. Based on this confirmation, Plaintiff accepted the unconditional $22,659.25 payment from American Family.

46. Upon information and belief, American Family did not have a reasonable basis for evaluating Plaintiff's damages at $122,659.25.

47. Upon information and belief, American Family did not have any reasonable basis for delaying its payment of the undisputed amount of $22,659.25 until January 19, 2018.

48. Upon information and belief, the claim representatives American Family assigned to handle to Plaintiff's UIM claim had not been adequately trained and/or were not adequately supervised by American Family management.

49. Upon information and belief, American Family did not follow its own internal claim-handling standards in adjusting Plaintiff's claim.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

50. Plaintiff incorporates into this First Claim for Relief all previous allegations made in this Complaint.

51. American Family breached its insurance contact with Plaintiff by failing to pay its UIM limits to him.

52. American Family also breached the insurance contract by failing to conduct a timely and reasonable investigation and evaluation of Plaintiff's UIM claim.

53. Plaintiff substantially complied with his obligations under the insurance contract.

WHEREFORE, Plaintiff requests that judgment be entered against American Family for actual damages in a sum to be determined by the trier of fact, together with interest and costs to the maximum extent provided by law.

## SECOND CLAIM FOR RELIEF
(Statutory Relief under C.R.S. §§10-3-1115 and 1116)

54. Plaintiff incorporates into this Second Claim for Relief all previous allegations made in this Complaint.

55. American Family denied and/or delayed payment of UIM benefits to Plaintiff without a reasonable basis.

56. C.R.S. §10-3-1116 provides in pertinent part that a first-party insurance claimant whose claim for benefits has been unreasonably delayed or denied may bring an action in a district court to recovery reasonable attorney fees and court costs and two times the covered benefit.

WHEREFORE, Plaintiff requests that judgment be entered against American Family in an amount equal to two times the covered benefits unreasonably delayed or denied by American Family, together with Plaintiff's reasonable attorney fees, court costs, and interest to the maximum extent provided by law.

## THIRD CLAIM FOR RELIEF
(Bad Faith Breach of Insurance Contact)

57. Plaintiff incorporates into this Third Claim for Relief all previous allegations made in this Complaint.

58. American Family acted unreasonably in the following respects, or any of them, and in any other respects ultimately revealed by the evidence: delaying payment of UIM benefits to Plaintiff; denying Plaintiff the full UIM benefits owed to him; failing to conduct a reasonable investigation of Plaintiff's UIM claim; failing to conduct a timely and reasonable analysis and

evaluation of Plaintiff's UIM claim; not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's UIM claim; and compelling Plaintiff to institute litigation to recover the amount of UIM benefits to which he is entitled.

59.     American Family recklessly disregarded the fact that its conduct and decisions with respect to Plaintiff's UIM claim were unreasonable.

60.     As a direct result of American Family's recklessly unreasonable conduct and decisions, Plaintiff sustained non-economic damages in a sum to be determined by the jury, including past and future mental pain and suffering, inconvenience, emotional distress, and impairment to the quality of his life.

WHEREFORE, Plaintiff requests that judgment be entered against American Family for actual damages in a sum to be determined by the trier of fact, together with interest and costs to the maximum extent provided by law.

**PLAINTIFF DEMANDS A TRIAL TO A JURY OF SIX (6) PERSONS.**

WAHLBERG, WOODRUFF, NIMMO
& SLOANE, LLP


*/s/ Thomas G. Tasker*
Thomas G. Tasker, Of Counsel #11556
Attorneys for Plaintiff

*In accordance with C.R.C.P. 121, Section 1-26(9,) a printed copy of this document with signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*

Plaintiff's Address:
c/o Wahlberg, Woodruff, Nimmo & Sloane, LLP
4601 DTC Boulevard, Suite 950
Denver, CO 80237